# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CARR & PORTER, LLC, | ) | |
| | ) | Case No. 07-70238-SCS |
| *Debtor.* | ) | |
| | ) | |
| TOM C. SMITH, JR., | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| | ) | APN 08-07051-SCS |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J. RIDGELY PORTER, III, | ) | |
| | ) | Chapter 7 |
| *Defendant.* | ) | |

## MEMORANDUM OPINION

This matter comes before the Court upon the Motion for Summary Judgment filed by the Defendant, J. Ridgely Porter, III ("Porter"), and upon the Motion to Amend the Complaint filed by the Plaintiff, Tom C. Smith, Jr., Chapter 7 Trustee ("Trustee") for the Debtor, Carr & Porter, LLC ("Debtor"). A hearing was conducted on each matter, on November 2, 2008, and December 11, 2008, respectively, and the matters were taken under advisement. Because the Motion for Summary Judgment and the Motion to Amend, as explained herein, are closely interrelated, this Memorandum Opinion will address both pleadings. This constitutes the conclusions of law of this Court respecting the Motion for Summary Judgment of Porter and the Motion to Amend of the Trustee.

### The Complaint of the Trustee

The Trustee filed his Complaint on May 7, 2008 (hereinafter "Complaint"). According to

the Complaint's preamble, the Trustee requests that this Court "set aside the transfer of assets to

Porter from the Debtor and to compel him to turnover those assets to the Estate" pursuant "to 11

U.S.C. §§547(b), 548(A), 548(B)(i) and (ii)(I) and 11 U.S.C. §544 and Va. Code 55-81."

The factual allegations of the Complaint are as follows. Prior to commencement of this

Chapter 7 case, the Debtor was a Virginia professional limited liability company engaged in the

practice of law. Complaint ¶ 1. Until March 31, 2005, Porter, a licensed Virginia attorney, was the

sole owner and managing member of the Debtor. *Id.* ¶ 2. On February 14, 2005, Porter entered into

an agreement, a copy of which is appended to the Complaint, with the Debtor, Kelly Daniels-

Sheeran, and Matthew D. Pethyridge (hereinafter "February 14 Agreement"). *Id.* ¶ 3. The February

14 Agreement provided as follows:

> a. Porter was to withdraw from the Debtor as an "equity partner" as of March 31, 2005;
>
> b. Porter was to continue to be employed by the Debtor, with his compensation to be determined by a formula based on his collected fees;
>
> c. Porter's "equity interest" in the Debtor was to be purchased from him by the Debtor for the sum of $1,000,000.00, which amount was allocated to various categories, including "imputed interest" of $87,690.25;
>
> d. The purchase price for Porter's "equity" was to be paid over a period of five years, in 119 installments of $8,333.33, plus a final installment of $8,333.73, pursuant to a promissory note . . . ; and
>
> e. Sheeran and Pethybridge agreed to guarantee the payment to Porter . . . .

Complaint ¶ 4. Pursuant to the February 14 Agreement, the Debtor began making semi-monthly

payments of $8,333.33 to Porter on April 15, 2005, and continued to do so until July 15, 2006.[1]

---

[1] Complaint ¶ 5; February 14 Agreement ¶ 5. The Complaint states that "the Debtor made payments of $8,333.33 per month to Porter." However, according to the February 14 Agreement, the Debtor was to make semi-monthly payments. Further, the Complaint states that

The Trustee argues that beginning March 31, 2005, and at all times thereafter through and including the Petition Date (February 8, 2007), the Debtor was insolvent, or was rendered insolvent by the February 14 Agreement. *Id.* ¶ 6.

Count One of the Complaint seeks a recovery against Porter pursuant to § 547(b) of the Bankruptcy Code, alleging that a transfer of $80,499.97 was made by the Debtor to Porter within one year of the filing of the bankruptcy petition by the Debtor.[2]  Count Two of the Complaint

---

payments were made "beginning April 15, 2005, through and including July 15, 2005." However, later in the Complaint, the Trustee claims payments were made until July 15, 2006.

[2]  Whether Count One asserts a claim solely under § 547(b) of the Bankruptcy Code or also asserts a claim under § 548 of the Bankruptcy Code is contested by the Trustee and Porter. *See infra*.  The Trustee specifically pleaded as follows in connection with his claim under Count One:

> 7.  That on or about February 8, 2007 (the "Petition Date") the debtor filed a petition in Chapter 7 in the Eastern District of Virginia, Norfolk Division.

> 8.  Tom C. Smith ("Plaintiff" or the "Trustee") was appointed as interim trustee of the estate of the Debtor, has qualified and is the presently-serving trustee for the Debtor.

> 9.  That pursuant to 11 USC §547(b), these payments to Porter constituted a transfer of the debtor's interest in property-

>> *1) to or for the benefit of a creditor;*
>> *2) for or on account of an antecedent debt owed by the debtor before such transfer was made;*
>> *3) made while the debtor was insolvent;*
>> *4) made-*
>> *(B) between ninety days and one year before the date of the filing of the petition, whereas such creditor at the time of such transfer was an insider; and*
>> *5) that enables such creditor to more than such creditor would receive if-*
>> *(A) the case were a case under Chapter 7 of this title;*
>> *(B) the transfer had not been made; and*
>> *(C) such creditor received payment of such debt to the extent provided by the provisions of this title.*

3

alleges that transfers of $255,500.00 by the Debtor to Porter are voidable as voluntary conveyances which were not for consideration deemed valuable at law, by an insolvent transferor or by a transferor who was thereby rendered insolvent by the transfers.[3]

10. That the defendant Porter is an insider in that he is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor.

11. That these transfers resulted in a total payment of approximately $255,500.00 paid to the defendant while the debtor was insolvent.

12. That of this amount $80,449.97, were transferred within one year of the filing of the petition, said amounts being paid between February 9, 2006 and July 15, 2006.

13. That the debtor received less than a reasonably equivalent value in exchange for such transfer and either was insolvent on the date such transfer was made or became insolvent as the result of such transfer.

**WHEREFORE**, Tom Smith, the Trustee of the Estate of Carr & Porter, by counsel, hereby moves that the transfer of $80,449.97 to the defendant J. Ridgely Porter, III be set aside as a preferential transfer to an insider of the debtor.

Complaint ¶¶ 7-13.

[3] Count Two of the Complaint of the Trustee provides as follows:

14. That the transfer of $255,500 constitutes a voluntary conveyance which is not upon consideration deemed valuable in law, by an insolvent transferor or by a transferor who was thereby rendered insolvent by the transfer.

15. That each and every monthly payment made by the debtor contributed to the deepening of the insolvency of the debtor for which the debtor received nothing of value in return.

16. That such payments constitute a gift, conveyance, assignment, transfer or charge which is void as to creditors whose debts shall have been contracted at the time it was made.

Complaint ¶¶ 14-16.

4

Porter answered the Complaint and affirmatively pled that "at the time of the negotiation and transfer of his equity interest in the Debtor, the Debtor was solvent and the value paid for the equity interest was a fair value obtained in arms length negotiations with sophisticated purchasers and is fully justified by the financial performance of the Debtor up to the time of conveyance." Answer ¶ 17. Porter further denied he was an insider, that the transfer was voidable, and that any such transfers were not for consideration deemed valuable at law. *Id.* ¶¶ 19-21. An initial pretrial conference was conducted by the Court on July 10, 2008. A trial date of November 18, 2008, was established.

On October 10, 2008, Porter filed his Motion for Summary Judgment (hereinafter "Summary Judgment Motion") and Memorandum in Support of the Motion for Summary Judgment (hereinafter "Porter Memorandum"), arguing that summary judgment is appropriate to all issues in the case. Summary Judgment Motion at 1. Porter argues that, in order to find liability under 11 U.S.C. § 547(b), relied upon by the Trustee for Count One, it is required that Porter be an insider at the time of the transfer, which he was not. Porter Memorandum at 4-5. Porter next argues that, under Virginia Code § 55-81, relied upon by the Trustee for Count Two, there must be no consideration received by the Debtor and that the Debtor received valuable, even if not equivalent, consideration as a result of the February 14 Agreement. Porter Memorandum at 6-8.

Appended to the Memorandum in Support is an affidavit from Porter (hereinafter "Porter Affidavit") and an affidavit from Christine G. Tribble ("Tribble"), the former administrator of the Debtor (hereinafter "Tribble Affidavit"). The Porter Affidavit provides that Porter entered into the February 14 Agreement and, pursuant to its terms, relinquished all executive authority to the purchasers and ceased to be an officer, director, or a person in control of the Debtor as of March

31, 2005.  Porter Affidavit ¶¶ 2-3.  Further, the Porter Affidavit states that as of the date of the sale,

all the Debtor's outstanding indebtedness had been paid, the Debtor had no debt of any kind due

to anyone, and the Debtor retained a number of tangible and intangible assets.  *Id.* ¶¶ 5, 9-13, 15,

16.[4]  The Tribble Affidavit provides that, pursuant to an employment agreement executed between

Tribble and the Debtor, Tribble continued as administrator of the Debtor after the sale of Porter's

interest.  Tribble Affidavit ¶ 3.  The Tribble Affidavit further states the Debtor had no debt at the

time of sale and that Porter did not possess, nor did he attempt to exercise, any management

authority other than to offer advice.  *Id.* ¶¶  4, 9, 11.

The Trustee responded to the Summary Judgment Motion on October 29, 2008, and

presented two arguments as to why Porter was not entitled to summary judgment.  Plaintiff's

Answer to Motion for Summary Judgment (hereinafter "Trustee Response").

> 1. . . . [O]n the issue [of] whether the transaction should be set aside as a
> voluntary conveyance[, the] Debtor maintains that the transfer of March 31,
> 2005 of the Defendant's interest in Carr & Porter, LLC, Matthew
> Pethybridge and Kelly Daniels-Sheeran for which the Debtor became
> obligated on was not made for consideration given to the Debtor. The
> consideration was given to Pethybridge and Sheeran according to paragraph
> 2 of the Declaration made by the Defendant Porter.
>
> 2. The Trustee denies the allegations that the defendant J. Ridgely Porter Jr.
> was not an insider and states that under applicable case law the actions of
> Porter prior and subsequent to the sale establishes his insider status. These
> actions include dictating the terms of the sale, arranging the loan on behalf
> of the law firm, continuing to work as an attorney for the firm, being the
> Responsible Attorney and point of contact for the firms [*sic*] major client,
> arranging  a new loan for the firm with Suntrust when the firm was suffering
> financially, and generally being involved in the ongoing financial affairs of

---

[4]  The Porter Affidavit summarizes the financial position of the Debtor, stating "[a]s of
the date of the sale, the Debtor had cash of $703.14, accounts receivable shown on its books and
records of $256,548.41, and work in progress of $103,475.92 as was reflected in the sale
documents."  Porter Affidavit ¶ 9.

the law firm.

Trustee Response at 1-2.  In addition to the Trustee Response, the Trustee submitted Plaintiff's

Memorandum in Opposition to Motion for Summary Judgment (hereinafter "Trustee

Memorandum") and an affidavit from Kelly Daniels-Sheeran, one of the two purchasers of Porter's

interest in the Debtor (hereinafter "Sheeran Affidavit").   The Sheeran Affidavit provides, in

pertinent part:

> 3.  That the loan with SunTrust Bank was arranged by Porter as well as the
> subsequent line increase in March 2006.
>
> 4.  That Porter met on a regular basis with the firm's bookkeeper, Christine G.
> Tribble, and gave her directions regarding the firm's finances.
>
> 5.  That Porter continued to do this from the time of the purchase of the membership
> interest until July 2006 when payments ceased to Porter.
>
> 6.  That Porter remained the responsible attorney and point of contact for all
> dealings with the Office of the Attorney General on cases involving the Virginia
> Department of Transportation ("VDOT") until April 2006.
>
> 7.  That the VDOT work was the primary source of income for Carr & Porter, LLC.
>
> 8.  That on or about May 2006, Porter contacted SunTrust Bank and requested that
> SunTrust Bank loan Carr & Porter, LLC funds to buy out his note.
>
> 9.  That after the sale of the interest in the LLC, Porter continued on as an attorney
> for which he was paid with Carr & Porter maintaining an office, sharing staff, and
> assisting with financial matters concerning the firm.
>
> 10.  That the firm Carr & Porter, LLC received nothing new from Porter after the
> sale other than the note obligation to Porter.

Sheeran Affidavit ¶¶ 3-10.  In the Trustee Memorandum, the Trustee argues that "[n]o value was

given to the [the Debtor] and therefore the transfer [to Porter] is void for lack of consideration"

pursuant to Virginia Code § 55-81.  Trustee Memorandum at 4.  The Trustee also argues that the

Sheeran Affidavit "at least shows that the issue of whether or not Mr. Porter was an 'insider' is not

subject to a Motion for Summary Judgment" with respect to the Trustee's claim under 11 U.S.C. § 547(b).  *Id.* at 6.

At the hearing on the Motion for Summary Judgment, the Court inquired of counsel for Porter whether Count One of the Complaint, in addition to stating a claim under § 547(b) of the Bankruptcy Code, asserted a claim under § 548 of the Bankruptcy Code.  Counsel for Porter believed that Count One of the Complaint asserted only a single cause of action—a claim pursuant to § 547 of the Bankruptcy Code for an alleged preferential payment.  Further, counsel for Porter argued any amendment to assert a new count under § 548 would be untimely and should not be permitted.  Counsel for the Trustee, however, asserted that the Complaint stated facts sufficient to establish a claim to avoid the conveyance as fraudulent under 11 U.S.C. § 548.

The day following argument on the Motion for Summary Judgment, the Trustee filed his Motion to Amend the Complaint (hereinafter "Motion to Amend").  In his Motion to Amend, the Trustee maintains that the Complaint, as originally pled, states a claim pursuant to § 548 of the Bankruptcy Code.  Thus, the Trustee does not request leave from the Court to plead a new count against Porter, but rather requests leave to "state with greater specificity the relief sought under [§] 548."  Motion to Amend ¶ 6.  In support of his Motion to Amend, the Trustee argues:

> Given the fact that the allegations of the Complaint state a claim under Section 548, that the Section is mentioned in the pleadings and in the Trustee's Memorandum, and that the defendant will not be prejudiced since under section (b) of Rule 15, the amendment could be made at the actual trial, the Trustee desires the Court to grant leave to [a]mend so that the Trustee can state with greater specificity the relief sought under Section 548.

*Id*.

Porter opposes the proposed amendment, believing that the Complaint plainly asserts but two claims, neither of them pursuant to § 548 of the Bankruptcy Code.  Memorandum in

Opposition to Motion to Amend at 1.  Further, Porter argues "that the Motion is untimely, not in accord with the rules and practices of this Court, severely prejudices Mr. Porter, and would be futile." *Id*.

Accordingly, before adjudicating the Motion for Summary Judgment, the Court must answer two questions: (1) does the Complaint of the Trustee assert a claim against Porter pursuant to § 548 of the Bankruptcy Code? and (2) if not, should the Court grant the Motion to Amend the Complaint of the Trustee?

### Does the Complaint of the Trustee Assert a Claim Pursuant to §548 of the Bankruptcy Code?

The Trustee asserts that his Complaint as filed contains a claim against Porter pursuant to § 548 of the Bankruptcy Code:

> 2.  That in the Complaint, the Trustee stated as follows:
>
> "**COMES NOW** the Trustee, Tom C. Smith, by counsel, and pursuant to 11 U.S.C. §§547(b), 548(A), 548(B)(i) and (ii)(I) and 11 U.S.C. §544 and Va. Code 55-81 and hereby moves to set aside the transfer of assets to J. Ridgely Porter, III from the debtor and to compel him to turnover those assets to the Estate."
>
> 3.  That the defendant has stated that the above, along with the allegations of fact regarding the transfer of $255,000.00 from the Debtor to Porter, failed to put him on notice that the Trustee was proceeding under Section 548 of the Bankruptcy Code.
>
> 4. That in the Memorandum (page 4) that accompanied the Trustee's response to the Motion for Summary Judgment, the Trustee states as follows:
>
> "Even if the Court found that some consideration was given, it certainly wasn't the reasonably equivalent value required under 11 USC548(a)(2)."

Motion to Amend ¶¶ 2-4.  The Trustee in essence believes his Complaint as filed sufficiently puts Porter on notice that he asserts a claim against Porter pursuant to 11 U.S.C. § 548.

The requirements of pleading a claim is governed by Rule 8 of the Federal Rules of Civil Procedure as incorporated by Rule 7008 of the Federal Rules of Bankruptcy Procedure. The Fourth Circuit Court of Appeals has examined the requirements of Rule 8:

> The district court apparently concluded that the Secretary's amended complaint did not satisfy Rule 8(a). The rule requires a complaint to include "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . , (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. (8)(a).

> The Supreme Court has recently reaffirmed that Rule 8(a)'s "simplified notice pleading standard" merely requires a statement that "'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

> . . . .

> As a leading treatise recognizes, then, Rule 8(a) only:

>> requires the pleader to disclose adequate information regarding the basis of his claim for relief as distinguished from a bare averment that he wants relief and is entitled to it. Undoubtedly great generality in the statement of these circumstances can be permitted so long as the defendant is given fair notice of what is being asserted against him.

> 5 Wright & Miller, *supra*, § 1202, at 94-95. Under this relaxed standard, unmeritorious claims and attempts at surprise are eliminated not by motions to dismiss, but rather primarily through "liberal discovery rules and summary judgment motions." *Swierkiewicz*, 534 U.S. at 512-13, 122 S.Ct. 992.

> We are mindful that "[w]hat constitutes a short and plain statement must be determined in each case on the basis of the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters." 5 Wright & Miller, *supra*, § 1217, at 240-41. In our post-*Swierkiewicz* case law, we have hewed closely to the Supreme Court's instruction that "all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99,

2 L.Ed.2d 80 (internal quotation marks and citation omitted).

*Chao v. Rivendell Woods, Inc*., 415 F.3d 342, 346-47 (4th Cir. 2005).  A review of Count One of the Complaint suggests that, despite the liberality of notice pleading contemplated by Rule 8, the Trustee has not plead a claim against Porter pursuant to § 548 of the Bankruptcy Code.

Section 548 of the Bankruptcy Code provides:

(a)(1)  The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

    (A)  made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

    (B)(i)  received less than a reasonably equivalent value in exchange for such transfer or obligation; and

        (ii) (I)  was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

        (II)  was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

        (III)  intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

        (IV)  made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C § 548(a)(1) (2008).

11

Section 548 of the Bankruptcy Code exists "to preserve 'the debtor's estate for the benefit of its unsecured creditors.'" *Banks Auto Parts, Inc. v. Banks Inv. I., LC* (*In re Banks Auto Parts, Inc.*), 385 B.R. 142, 153 (Bankr. E.D. Va. 2008) (quoting *Harmon v. First Am. Bank of Md.* (*In re Jeffrey Bigelow Design Group, Inc.*), 956 F.2d 479, 485 (4th Cir. 1992)) (citations omitted).  Judge Catliota has recently examined this section:

> Under Section 548(a)(1)(B)(i), a transfer can only be avoided if the debtor "received less than reasonably equivalent value for such transfer . . ." For purposes of Section 548, ". . . value means property, or satisfaction or securing of a present or antecedent debt of the debtor . . ." 11 U.S.C. § 548(d)(2)(A).  "[R]easonably equivalent value looks to the consideration actually received by the debtor, not to the value given by the transferee." *Koch v. Rogers* (*In re Broumas*), 203 B.R. 385, 393 (D. Md. 1996) (citing *Harman v. American Bank of Maryland* (*In re Jeffrey Bigelow Design Group, Inc.*), 956 F.2d 479, 484 (4th Cir. 1992)).

*Whitney v. Newman* (*In re Whitney*), No. 06-14435-TJC, 2007 WL 2230063, *5 (Bankr. D. Md. July 30, 2007).

The preamble of the Complaint does state that the Trustee comes "pursuant to 11 U.S.C. §§547(b), 548(A), 548(B)(i) and (ii)(I) and 11 U.S.C. §544 and Va. Code 55-81."  However, after this mention, references to 11 U.S.C. § 548 largely disappear.  The body of Count One proceeds to specifically recite the statutory provisions of 11 U.S.C. § 547(b) for avoidance of a preferential transfer.  Thereafter in Count One, the Trustee alternates paragraphs that refer to the stated claim under 11 U.S.C. § 547(b) with references that recite some of the elements under 11 U.S.C. § 548:

> 10.  That the defendant Porter is an insider in that he is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor.

> 11.  That these transfers resulted in a total payment of approximately $255,500.00 paid to the defendant while the debtor was insolvent.

> 12.  That of this amount $80,449.97, were transferred within one year of the filing of the petition, said amounts being paid between February 9, 2006 and July 15,

2006.

13.  That the debtor received less than a reasonably equivalent value in exchange for such transfer and either was insolvent on the date such transfer was made or became insolvent as the result of such transfer.

Complaint ¶¶ 10-13.  The Complaint completes Count One with a prayer for relief against Porter for avoidance of a preferential transfer under 11 U.S.C. § 547(b):  "WHEREFORE, Tom Smith, the Trustee of the Estate of Carr & Porter, by counsel, hereby moves that the transfer of $80,449.97 to the defendant J. Ridgely Porter, III be set aside as a preferential transfer to an insider of the debtor."  Perhaps most significantly, this prayer for relief under Count One seeks an award of monies from Porter in an amount of the alleged preferential transfers from the Debtor to Porter, i.e., $80,449.97, and not the amount of the total payments allegedly made to Porter while the Debtor was insolvent of $255,500.00.[5]

The Official Form 104 Adversary Proceeding Cover Sheet filed by the Trustee provides further evidence that a claim pursuant to § 548 was not pled.  Official Form 104 requires the filer to designate the nature of the suit filed, with instructions thereupon to "number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc)."  The sole box checked by the Trustee is "12-Recovery of money/property - §547 preference."  The box immediately below designated as "13-Recovery of money/property - §548

---

[5]  If the Trustee was asserting a claim against Porter pursuant to 11 U.S.C. § 548 for an alleged fraudulent transfer, the measure of damages consistent with such an allegation would the full amount transferred while the Debtor was insolvent.  *See* Complaint ¶ 11 ("That these transfers resulted in a total payment of approximately $255,500.00 paid to the defendant while the debtor was insolvent.").  Instead, the prayer under Count One seeks an award of the amount alleged to have been preferentially transferred by the Debtor to Porter during the one year look-back provision of § 547(b) for an "insider."  *See id.* ¶ 12 ("That of this amount $80,449.97, were transferred within one year of the filing of the petition, said amounts being paid between February 9, 2006 and July 15, 2006.").

13

fraudulent transfer" bears no mark or check.[6]

The liberality of the notice pleading permitted by Rule 8 of the Federal Rules of Civil Procedure is axiomatic;  however, the issue at this juncture "is not a liberal construction issue, but whether the trial court [is] obligated to construct a cause of action from allegations in a complaint filed by a party who was unwilling or unable to plead the cause of action himself." *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 372 (10th Cir. 1989).  "[A] plaintiff must allege the elements of a 'viable legal theory' and give the defendant 'fair notice of what the claim is and the grounds upon which it rests.'" *Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, No. 3:08-CV-00233, 2008 WL 2857191, at *1 (E.D. Va. July 21, 2008) (citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964, 1969 (2007)).  "[P]leadings are meant to state the issues in a case 'so that the parties can conduct discovery and present their claims intelligently.'" *Nat'l Bank of Washington v. Pearson*, 863 F.2d 322, 328 (4th Cir. 1988) (quoting *Deasy v. Hill*, 833 F.2d 38, 41(4th Cir. 1987).  Here, Porter "could sensibly have decided not to commit [his] resources to a shadowy claim that [the plaintiff] may or may not have been serious about raising." *Deasy*, 833 F.2d at 41. For the purposes of defeating the Summary Judgment Motion, Count One of the Complaint does not fairly apprise Porter that the Trustee was proceeding against him on a fraudulent conveyance claim pursuant to 11 U.S.C. § 548.[7]  It remains to conclude whether the Trustee should be granted

---

[6] There is also no designation for the claim pursuant to § 55-81 of the Code of Virginia in Count Two of the Complaint, which appears should have been accounted for by checking the box entitled  "☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)" on Official Form 104.

[7] It is this Court's belief that for the purposes of the Motion for Summary Judgment, it is necessary only to decide whether Count One sufficiently pleads a § 548 claim so as to defeat the contention of Porter that he is entitled to an award of summary judgment as to the entirety of the Trustee's claims, i.e., that the Complaint should be dismissed in whole because the Trustee is not entitled to judgment on his stated claims under § 547 of the Bankruptcy Code and Virginia Code

leave to amend Count One to assert a fraudulent conveyance action pursuant to § 548 of the Bankruptcy Code claim at this time.

### Should the Motion to Amend the Complaint be Granted?

Federal Rule of Civil Procedure 15(a) allows a party to amend their pleadings with the court's leave. Fed. R. Civ. P. (15)(a). The rule instructs that leave should be "freely given when justice so requires," *id.*, and the Supreme Court has stated that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fourth Circuit Court of Appeals has stated that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on part of the moving party, or the amendment would have been futile." *See Johnson v. Orowheat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182).

While delay alone is insufficient to deny leave to amend, *see Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006); *Johnson*, 785 F.2d at 509, courts in this district recognize that the further a case is allowed to progress before leave to amend is sought, the more likely it is that the amendment will prejudice the non-moving party. *See Laber*, 438 F.3d at 427 ("[T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part."); *Pine Mountain Oil & Gas, Inc. v. Equitable Prod. Co.*, 446 F. Supp. 2d 643, 649 (W.D. Va. 2006) ("After some time, the delay will become undue, placing an unwarranted burden on the court, or 'prejudicial,' placing an unfair burden on the opposing party."). Further, the Fourth Circuit has found that "a

§ 55-81. The issue of whether the Trustee should be granted leave to amend the Complaint is analytically distinguishable and addressed separately, *infra.*

15

motion to amend should be made as soon as the necessity for altering the pleading becomes

apparent.  A party who delays in seeking an amendment is acting contrary to the spirit of the rule."

*Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987) (citing 6 Wright & Miller, Federal Practice &

Procedure §1488 (1971)).  The timeliness of a plaintiff's motion to amend is a critical factor in

assessing dilatory motive, undue delay, bad faith, and prejudice.  *See Harding v. Kellam*, 155 F.3d

559 at *3 (4th Cir. Jul. 15, 1998) (unreported table decision).  "[A]mendments near the time of

trial may be particularly disruptive, and may therefore be subject to special scrutiny."  *Id.*

In *Deasy*, the plaintiff filed expert witness statements, which provided the basis for a

negligent performance claim.  *Deasy*, 833 F.2d at 41.  The original complaint made no mention

of the negligent performance claim, and the plaintiff did not seek leave to amend until three

months later.  *Id.*  In upholding the district court's ruling that the delay was unwarranted, the Court

stated:

> A complaint is meant to state the issues of a case so that the parties can conduct
> discovery and present their cases intelligently.  Hinting at a claim in an expert
> witness statement leaves the opposing party guessing at one's real intentions.  The
> original complaint led defendant to believe that plaintiff did not claim negligent
> performance, and defendant could quite sensibly have decided not to commit her
> resources to a shadowy claim that plaintiff may or may not have been serious about
> raising.
>
> . . . . The proof required to defend against this new claim would have of an entirely
> different character than the proof which the defendant had been led to believe
> would be necessary.  Belated claims which change the character of litigation are
> not favored.

*Id.* at 41-42.  *See also Howard v. Inova Health Care Services*, 2009 WL 5110970 at *13 (4th Cir.

Dec. 5, 2008) (slip copy) ("[The plaintiff] has not shown that his proposed amendment to add an

ADA claim resulted from the discovery of new facts that prompted his motion to amend."); *Naden*

*v. Saga Software, Inc.*, 11 F. App'x 381, 382-83 (4th Cir. 2001) (per curiam) (finding that the

16

motion to amend was properly denied by the district court where "[the] Plaintiff's motion was filed four months after the Scheduling Order's deadline for amendment of pleadings without explanation" and where the district court made a specific finding of prejudice because "[the plaintiff] did not seek to amend until after [the defendant] filed its motion for summary judgment– even through his amendment was based 'on facts known to [him] at the time he commenced this lawsuit'– and thus [the defendant] relied upon the original pleading in conducting discovery and preparing its motion for summary judgment."); *Jones Engineering Sales, Inc. v. Faulkner/Baker and Associates, Inc.*, 199 F.3d 1327 at *3 (4th Cir. Oct. 26, 1999) (unpublished table decision) ("After the passage of almost one year, and just two months before the scheduled trial date, [the defendant] finally moved to amend its answer to assert the statute of limitations defense. The district court rightly found that Faulkner/Baker's conduct was 'beyond dilatory in seeking to asset its statute of limitations defense.'"); *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997) ("As in *Deasy*, in this case 'the delay was significant, and the motion to amend came right before trial and after discovery was complete'. . . [g]ranting [the plaintiff's] motion to amend would have required [the defendant] to argue a whole new set of claims, based on completely new theories.").

Here the Motion to Amend was filed on November 4, 2008, after argument on the Motion for Summary Judgment and after the deadline for filing motions prior to the trial date had passed.[8] More significantly, however, the Motion to Amend came one month after the Summary Judgment Motion was filed on October 3, 2008. The Summary Judgment Motion made clear that Porter was proceeding on a theory that the Complaint pled only two counts—one under 11 U.S.C. § 547 and one under Virginia Code § 55-81—and the Court should grant summary judgment for both. *See*

---

[8] On November 4, 2008, the Court entered an order continuing generally the trial in this matter pending this Court's ruling on the Summary Judgment Motion.

17

Summary Judgment Motion at 1 (stating that Porter "moves for summary judgment as to *all* issues in this case") (emphasis added); Porter Memorandum at 1 ("[The Trustee] has sued Mr. Porter alleging that any funds transferred for the sale of the business should be set aside. The Trustee's claim is based upon *two* assertions, neither of which is correct.") (emphasis added); Porter Memorandum at 8 (stating in the conclusion that "*both* counts pled by the Trustee fail, and summary judgment should be granted to Mr. Porter") (emphasis added). While at that point the Trustee should have realized that Porter did not identify the § 548 claim as a cause of action that had been pled, the Trustee made no motion to amend in order to clarify, as he does now. Nor did the Trustee, in his response to the Summary Judgment Motion, in any way acknowledge that Porter was proceeding under a mistaken interpretation of the Complaint. *See generally* Trustee's Response; Trustee's Memorandum. Rather, the Trustee ignored his alleged claim under § 548, except for one passing reference found in the Trustee's Memorandum. Trustee's Memorandum at 4 ("Even if the Court found that some consideration was given, it certainly wasn't the reasonably equivalent value required under 11 USC 548(a)(2).").

The Trustee argues there will be no prejudice to Porter because the purpose of the amendment is only to more clearly define the causes of action against him, and "there is no effort being made to add additional facts nor to change the substance of the complaint." Memorandum in Support of Motion to Amend Complaint at 4. This Court disagrees. As the Court held *supra*, the Trustee did not sufficiently plead a cause of action under § 548 to satisfy Federal Rules of Civil Procedure 8. Thus, an amendment would not more clearly define a cause of action but would add a third cause of action for Porter to defend. As pled, the Complaint led Porter to believe that the Trustee was proceeding on two counts. Rather than waste resources in defending against a

18

third count the Trustee may or may not have raised, Porter took no discovery with regard to the possible § 548 claim.  *See* Memorandum in Opposition to Motion to Amend at 4.  Allowing the amendment at this time would require the Court to reopen discovery and would require Porter to ascertain proof of "an entirely different character than the proof which the defendant had been led to believe would be necessary."  *Deasy*, 833 F.2d at 42.  Namely, Porter would be required to prove that the Debtor did not receive less than reasonably equivalent value for the transfer, that the Debtor was not insolvent on the date that such transfer was made, and did not become insolvent as a result of the transfer.  *See* 11 U.S.C. § 548(a)(B)(i) & (ii)(I).  In defending against the claims made under 11 U.S.C. § 547 and Virginia Code § 55-81, Porter did not reach the issue of insolvency, choosing instead to garner proof that the Trustee failed to establish other elements required of each claim.  Further, as explained *infra*, Virginia Code § 55-81 does not require equivalency of consideration; rather, the claim merely requires a showing that any consideration was given.   This, of course, is a very different inquiry, and one that Porter did not believe to be necessary. *See Deasy*, 833 F.3d at 42 ("The proof required to defend against this new claim would be of an entirely different character than the proof which the defendant had been led to believe would be necessary.").

The Trustee further argues that Porter would not be prejudiced because the amendment could be made at the actual trial pursuant to Federal Rule of Civil Procedure 15(b).  *See* Memorandum in Support of Motion to Amend at 4.  Rule 15(b)(1) states:

> If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and *the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits*. The court may grant a continuance to enable the objecting party to meet the evidence.

Fed. R. Civ. P. (15)(b)(1) (emphasis added).   Thus, Rule 15(b)(1) requires Porter to prove prejudice.   The Court finds that Porter has met his burden and the Trustee is incorrect that an amendment of the nature which he seeks in the Motion to Amend would have been permitted here at trial.

The Trustee's failure to amend when the necessity became apparent demonstrates that the Trustee is acting contrary to the spirit of Rule 15(a).   The proposed amendment occurs very late in the trial process of this matter and would cause undue delay.   Further, allowing such amendment would be highly prejudicial to Porter.   Accordingly, the Trustee's Motion to Amend must be denied.

### Resolution of the Motion for Summary Judgment of Porter

### Count One
### § 547(b) of the Bankruptcy Code

Porter asserts that the current record in this proceeding conclusively establishes he is not an "insider" and therefore the claim of the Trustee under § 547 of the Bankruptcy Code must fail:

> The Trustee's claim that Mr. Porter was an insider is based upon an allegation "that [Mr. Porter] is one who has a sufficiently close relationship with the Debtor that his conduct is made subject to the closer scrutiny than those dealing at arm's length with the Debtor." (¶ 10 of Complaint).   What the Trustee means by a close relationship is unexplained, but for purposes of a bankruptcy act, an insider is precisely defined, and Mr. Porter does not meet that definition.

Porter Memorandum at 4.   The Trustee disagrees, contending that the definition of an insider for the purposes of § 547(b) is far broader than Porter claims and that the Sheeran Affidavit raises sufficient facts to establish an issue of whether Porter was an insider.   Trustee Memorandum at 4-6.

Section 547(b) of the Bankruptcy Code provides:

20

[T]he trustee may avoid any transfer of an interest of the debtor in property—

   (1)     to or for the benefit of a creditor;

   (2)     for or on account of an antecedent debt owed by the debtor before such transfer was made;

   (3)     made while the debtor was insolvent;

   (4)     made—

      (A)     on or within 90 days before the date of the filing of the petition; or

      (B)     between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

   (5)     that enables such creditor to receive more than such creditor would receive if—

      (A)     the case were a case under chapter 7 of this title;

      (B)     the transfer had not been made; and

      (C)     such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (2008). The Bankruptcy Code defines insider, in pertinent part, as an "affiliate, or insider of an affiliate as if such affiliate were the debtor." *Id*. § 101(31)(E). An affiliate, in turn, is an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor." *Id*. § 101(2)(A).

The Bankruptcy Code provides a non-exclusive definition of the term "insider." Section 101(31)(B) provides that, if the debtor is a corporation, the term "insider" includes:

   (i)     director of the debtor;

   (ii)     officer of the debtor;

21

(iii)   person in control of the debtor;

(iv)   partnership in which the debtor is a general partner;

(v)   general partner of the debtor; or

(vi)   relative of a general partner, director, officer or person in control of the debtor.

*Id.* § 101(31).  Because the statutory language merely "includes" types of persons deemed to be insiders, courts have found these categories nonexhaustive.  "[A]n insider may be any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny."  *Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir. 1996).  "Courts generally hold, in accordance with the legislative history of Section 101(31), that insider status is determined by a factual inquiry into the closeness of the relationship between the parties and whether the transaction between the transferee and debtor was conducted at 'arm's length.'"  *Three Flint Hill Ltd. P'Ship v. Prudential Ins. Co.* (*In re Three Flint Hill Ltd. P'ship*), 213 B.R. 292, 298 (D. Md. 1997) (citing *In re Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992)).

The Fourth Circuit Court of Appeals has provided direction on this issue in *Butler v. David Shaw, Inc.*, 72 F.3d 437 (4th Cir. 1996).  In *Butler*, the factual circumstances were similiar to the instant matter.

David Shaw (Shaw) is the president and sole shareholder of Shaw, Inc., a Ford automobile dealership located in Elizabethtown, North Carolina.  In 1989, Shaw approached Edward Lee Tatum, then the general manager of an automobile dealership in North Carolina, about purchasing the assets of Shaw, Inc.  After lengthy negotiations, Shaw, Inc. and Tatum executed an agreement under which Tatum purchased the assets of Shaw, Inc. for $710,000.  Of this amount, Shaw, Inc. received $500,000 in cash and $200,000 in the form of a promissory note, and Shaw received an option, which he exercised, to purchase 22.22% of the debtor's authorized stock for $10,000.  In addition, Tatum agreed to employ Shaw and Shaw's wife and son.  In a separate agreement, the debtor leased the premises upon

22

which the dealership was located from Shaw, Inc. for $7,000 per month.

. . . .

After the sale, Shaw retained the title of manager but did not
exercise any managerial authority over the debtor's operations or personnel.
Rather, Shaw primarily acted as a salesman and, secondarily, retrieved
parts and automobiles from other dealerships when necessary.

*Butler*, 72 F.3d at 439-40.

Subsequently the business failed, and the Chapter 7 Trustee sought to recover the payments

made to the former president and shareholder.

Butler argued that Shaw, Inc. was an insider at the time of the transfers either
under the statutory definitions of the terms "transfer" and "insider," *see* 11
U.S.C.A. § 101(31), (54) (West 1993), or because of Shaw's close relationship to
Tatum, *see Hunter v. Babcock* (*In re Babcock Dairy Co.*), 70 B.R. 662, 666 (Bankr.
N.D. Ohio 1986). The bankruptcy court granted judgment to Shaw, Inc.,
concluding that Shaw, Inc. was not an insider under either theory at the time of the
challenged transaction.

*Id*. at 440. Notwithstanding the fact the former president and shareholder was an insider at an

earlier time, the Court concluded he was not an insider when the transfers of monies were made:

[The Trustees'] first argument, that Shaw, Inc. was an insider at the time of
the transfers, rests upon a strained interpretation of the term "transfer" as defined
in the bankruptcy code. *See* 11 U.S.C.A. § 101(54). [The Trustee] argues that a
transfer is not a single occurrence, but rather a related sequence of events. Thus, a
transfer has a beginning and an end; it is not a unitary event occurring at a single
moment in time. [The Trustee] further argues that insider status does not cease until
the insider's influence over a particular transaction has run its course, *i.e.*, until the
transfer is complete. Here, [the Trustee] posits that the transfer to Shaw, Inc. began
when Shaw executed the stock-relinquishment agreement and concluded with the
honor of the checks to Shaw, Inc. Because Shaw, Inc. was an insider when the
transaction *began*, [the Trustee] maintains, its influence remained throughout the
events comprising the transfers, and the transfers should be avoided.

Even if we were tempted to adopt Butler's novel interpretation of the
bankruptcy code, the Supreme Court's decision in *Barnhill* renders us powerless to
do so. In *Barnhill*, the Court construed the very provision at issue here and clearly
held that a transfer by check is a single event occurring at a definite moment in

23

time:

> [R]eceipt of a check gives the recipient no right in the funds held by
> the bank on the drawer's account. Myriad events can intervene
> between delivery and presentment of the check that would result in
> the check being dishonored. The drawer could choose to close the
> account. A third party could obtain a lien against the account by
> garnishment or other proceedings. The bank might mistakenly
> refuse to honor the check.
>
> The import of the preceding discussion for the instant case is that no
> transfer of any part of the debtor's [funds] occurred until the bank
> honored the check . . . . We thus believe that when the debtor has
> directed the drawee bank to honor the check *and* the bank has done
> so, the debtor has implemented a "mode, direct or *indirect . . .* of
> disposing of property or an interest in property." [11 U.S.C.A. §
> 101(54).] *For the purposes of payment by ordinary check, therefore,
> a "transfer" as defined by § 101(54) occurs on the date of honor,
> and not before.*

*Barnhill*, 503 U.S. at 399-400, 112 S.Ct. at 1390 (third emphasis added; citations
& footnote omitted). Thus, it is irrefutable that the transfers to Shaw, Inc. occurred
after it had ceased to be an insider.

*Butler*, 72 F.3d at 441-42. The logic of this conclusion was recognized by the Court:

> Similarly, we reject Butler's approach because it would require us to expand
> the statutory definition of the term "insider" in a manner that leads to an unduly
> litigious result. Obviously, in many cases it will be difficult, if not impossible, for
> a court to determine when an insider's influence has ceased to affect the actions of
> the debtor. In light of the Supreme Court's clear preference for bright-line rules in
> this area of the law, we are loathe to adopt an interpretation of the bankruptcy code
> that would blur the line established by 11 U.S.C.A. § 101(2)(A), (31)(E).[9]

---

[9] The Fourth Circuit Court of Appeals also found support for its conclusion in the
statutory options for avoidance adopted in the Bankruptcy Code:

> Further, it appears to us that the provision of the bankruptcy code allowing the
> trustee to avoid fraudulent transfers may allow a trustee to avoid a transfer to a
> former insider, provided, of course, that the trustee can show, *inter alia*, that the
> transfer was made "with actual intent to hinder, delay, or defraud" or that the
> debtor "received less than a reasonably equivalent value" for the transfer. 11
> U.S.C.A. § 548(a) (West 1993). Thus, in addition to being unwise, the statutory
> interpretation proposed by Butler is unnecessary.

*Id*. at 442.

As the Trustee has done here, the Chapter 7 Trustee in *Butler* also argued that the former

president exercised sufficient control over the debtor such that he should be deemed an insider

notwithstanding his resignation as an officer and director prior to the alleged preferential transfers

in question.  The Fourth Circuit Court of Appeals found no basis for this assertion:

> Butler next argues that Shaw, Inc. should be deemed an insider because of Shaw's close relationship with Tatum.  It is well settled that the statutory definition of insider is not exhaustive; "[r]ather, an insider may be any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny." *Hunter v. Babcock* (*In re Babcock Dairy Co.*), 70 B.R. 662, 666 (Bankr. N.D. Ohio 1986).  In order to satisfy this standard, the alleged insider "must exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *Id.*  That simply is not the case here.  It is undisputed that although Shaw held the title of manager, he exercised no managerial authority over the debtor.  He did not make personnel decisions, did not handle the payroll or accounts receivable, and was otherwise uninvolved in the management of the business.  Also, we do not believe that Shaw's ability to secure employment for his wife and son indicates that Shaw possessed the ability to dictate corporate policy.  We therefore reject Butler's contention that Shaw exercised such a degree of control over the debtor that Shaw, Inc. should be considered an insider.

*Id*. at 443.

In the instant matter, the Trustee apparently relies upon certain provisions of the Sheeran

Affidavit to factually establish that Porter was an insider at the time of the transfers in question.

In these regards, the Sheeran Affidavit affirms:

> 4.  [That] Porter met on a regular basis with the firm's bookeeper, Christine G. Tribble, and gave her directions regarding the firm's finances.

> 5.  That Porter continued to do this from the time of the purchase of the membership interest until July 2006 wen [*sic*] payments ceased to Porter.

---

*Butler*, 72 F.3d at 442.

6. That Porter remained the responsible attorney and point of contact for all dealings with the Office of Attorney General on cases involving the Virginia Department of Transportation ("VDOT") until April 2006.

7. That the VDOT work was the primary source of income for Carr & Porter, LLC.

8. That on or about May 2006, Porter contacted SunTrust Bank and requested that SunTrust Bank loan Carr & Porter, LLC funds to buy out his note.

9. That after the sale of the interest in the LLC, Porter continued on as an attorney for which he was paid with Carr & Porter maintaining an office, sharing staff, and assisting with financial affairs concerning the firm.

Sheeran Affidavit ¶¶ 4-9. "Once the moving party presents evidence sufficient to carry its burden under Rule 56, the non-moving party may not rest upon its pleadings, but must affirmatively set forth, by affidavits or otherwise, 'specific facts showing a genuine issue for trial.'" *Lopez-Galvan v. Mens Wearhouse*, No. 3:06-CV-00537, 2008 WL 2705604, *1 (W.D.N.C. July 10, 2008) (quoting Fed. R. Civ. P. 56(e)(2)). Accordingly, this Court must examine the assertions made in the Sheeran Affidavit and judge whether they are sufficient to raise an issue of fact as to whether Porter was an insider at the time of the transfers from the Debtor to Porter.

Earlier decisions provide enlightenment to the Court in this regard. In *Hunter v. Babcock* (*In re Babcock Dairy Co. of Ohio, Inc.*), 70 B.R. 662 (Bankr. N.D. Ohio 1986), the court considered whether the recipient of payments from a debtor who was retained under an employment contract was an insider.

[T]he Court must consider the question of whether or not Babcock was a person in control of the debtor. A review of the evidence finds that he was employed by the Debtor under a contract of employment. Although the contract specifically enumerates the duties to be performed by Babcock, the testimony indicated that he was not expected to totally fulfill any duties which might be assigned. The testimony also indicated that he reviewed the Debtor's accounts receivable and conducted work that related to the Debtor's customers. This evidence suggests that Babcock served more in the capacity as an advisor to the Debtor than as a person with specifically assigned tasks. Such a position would

26

> naturally result from the fact that Babcock was familiar with the Debtor's customers
> and could be of benefit to the company in that regard.  However, it does not appear
> that this position enabled Babcock to make any dispositive corporate decisions.  The
> evidence indicates that the employees understood [the new owner] to be both the
> owner of the business and the person to whom they would answer regarding
> business decisions.

*Id.* at 667.  This evidence was found to be insufficient to establish insider status:

> In the absence of evidence which demonstrates Babcock's participation in
> the corporation's management, this Court cannot find that he had any meaningful
> control of the Debtor.  The evidence reflects that he had no authority to dispose of
> corporate assets, nor did he prevail in any decisions regarding the operation of the
> Debtor's business.  The evidence clearly indicates Babcock was merely an
> employee of the Debtor who was the beneficiary of a favorable employment
> contract.  With the exception of offering advice to the company regarding its
> accounts receiveable [*sic*] and exercising his ability to solicit customers for the
> business, the evidence indicates that Babcock had no meaningful control over any
> corporate affair.  Without such control, this Court cannot conclude that Babcock
> was an insider within the contemplation of 11 U.S.C. § 101(25)(B)(iii).

*Id.* at 668.

In *Ellenberg v. William Goldberg & Co.* (*In re Sullivan Haas Coyle, Inc.*), 208 B.R. 239

(Bankr. N.D. Ga. 1997), a trustee sought recovery of payments made by the debtor to a financial

consulting company, contending that the consulting company and its president had become

insiders, largely due to the duties undertaken by the consultant.

> Defendant Goldberg & Co. acted as a financial consultant to the debtor for
> approximately two years, the defendants working with the debtor on a daily basis.
> Goldberg & Co. gave SHC advice on all financial matters, but Messrs. Sullivan,
> Haas and Coyle always made the final decisions.  Goldberg & Co. created weekly
> "cash plans" showing what the debtor owed, what bills were expected, what
> receivables were due, and when collections were expected.  In order to prepare
> these cash plans, Mr. Goldberg saw invoices, check stubs, bank statements, and
> receivables of the debtor.  Mr. Goldberg also assisted the debtor in acquiring new
> accounts receivable financing, and he introduced the debtor to a new accountant.
> Mr. Goldberg spoke with many of the debtor's creditors concerning their accounts
> and when they might receive payment.

> Mr. Goldberg talked to the debtor's bank daily regarding the status of

debtor's account.  When there were insufficient funds to cover debtor's checks, the bank would charge the debtor an insufficient funds fee but would pay the checks. Then, sufficient funds to cover the checks would be deposited by the debtor.  When there were insufficient funds, the bank would fax to someone at the debtor (usually Mr. Goldberg) a list of checks written by SHC and a statement of funds available, seeking instructions as to which checks to pay.  Mr. Goldberg would follow up, relate the information to a principal of the debtor (usually Mr. Coyle), and Mr. Coyle and Mr. Goldberg would discuss which checks should be paid.  Mr. Goldberg then reported the decision to the bank.

*Id*. at 241.  These activities were insufficient to impose insider status:

Applying the law to the facts, the Court concludes that Defendants Goldberg & Co. and Mr. Goldberg were not insiders within the meaning of § 101(31).  They did not have the necessary degree of closeness or control over the debtor, and the transactions between the defendants and the debtor were conducted at arm's length. While Defendant Goldberg & Co. had day-to-day involvement for two years in the debtor's cash management, the defendants' relationship to the debtor did not have the intensity and involvement of the "long term complex relationship" in *Broumas,* and it was more like the professional relationship in *Friedman*.  In addition, the defendants could not sign checks for the debtor, could not hire or fire employees and had no role in production or the operation of the business.  Significantly, the consulting agreement between the debtor and Defendant Goldberg & Co. was terminable at will by either party.  *See Cavalier Homes*, 102 B.R. at 883-84.

While defendant Goldberg & Co. was retained to give the debtor financial advice and, in the course of their relationship, the defendants obtained considerable knowledge about the financial condition of the debtor, this advice and knowledge alone does not make one an insider.  Professionals are often hired by businesses in financial straits, and those professionals typically give advice and obtain knowledge about the debtor's financial condition.  That knowledge, without the type of closeness or control found in the cases discussed above, should not make a consultant or professional an insider, subject to the expanded one-year reachback in the preference statute.

*Id*. at 246.  *See also Gray v. Giant Wholesale Corp*., 758 F.2d 1000, 1003 (4th Cir. 1985) ("Giant, however, was not an insider or a person in control of Food Center merely because Giant controlled the dispensation of its checks.  Instead, [the debtor] had sole control over Food Center because [the debtor] controlled the amount of money that was placed into the account and [the debtor] managed every aspect of the store, including setting the store's hours, setting employee wages, making hiring

28

and firing decisions, determining what advertising was necessary, and determining what goods were to be purchased.").

In order to defeat summary judgment on this issue, the Trustee must set forth facts showing a genuine issue for trial.  However, an examination of the assertions contained in the Sheeran Affidavit show the Trustee's facts fall short of showing that Porter had "sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *Butler v. David Shaw, Inc*., 72 F.3d 437, 443 (4th Cir. 1996) (quoting *Hunter v. Babcock* (*In re Babcock Dairy Co.*), 70 B.R. 662, 666 (Bankr. N.D. Ohio 1986).  After the sale of his interest in the Debtor, Porter remained an important attorney responsible for the Debtor's most significant client.  Further, Porter assisted in financial matters for the firm, including giving direction to Tribble, the firm's bookkeeper, and contacting SunTrust Bank about making a loan to Carr & Porter, LLC to buy out Porter's note.  However, after the sale of the interest of Porter in the Debtor, it is undisputed that Porter relinquished all executive authority as to the Debtor and, as attested to by Tribble, could no longer function in any management capacity "other than to offer advice," Tribble Affidavit ¶ 4, which apparently was often unheeded by the new owners of the Debtor. Porter Affidavit ¶ 7.  Trustee's factual showing fails to demonstrate a genuine issue regarding Porter's status as an insider for the purposes of § 547(b) of the Bankruptcy Code.  *Butler*, 72 F.3d at 443.  There being no material facts in dispute, Porter is entitled to the entry of summary judgment as to Count One of the Trustee's Complaint.

**Count Two**
**Virginia Code § 55-81**

Porter advances two arguments which he believes entitle him to an award of summary

29

judgment as to Count Two of the Trustee's Complaint: (1) as there were no creditors of the Debtor at the time of the transaction, the Trustee cannot prevail on a claim pursuant to Virginia Code § 55-81, and (2) as a result of the transaction of the Debtor with Porter, the Debtor received consideration deemed valuable at law.  Each contention is correct.

The Trustee relies upon Virginia Code § 55-81, which provides:

> Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made.  Even though it is decreed to be void as to a prior creditor, because voluntary or upon consideration of marriage, it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers.

Va. Code Ann. § 55-81 (2008).  "To avoid a transfer pursuant to this provision, the trustee must demonstrate that (1) a transfer was made, (2) the transfer was not supported by consideration deemed valuable in law, and (3) the transfer was done when the transferor was insolvent or the transfer rendered the transferor insolvent."  *Wu v. Tseng*, No. 2:06-CV-00346, 2007 WL 201087, at *6 (E.D. Va. Jan. 24, 2007) (quoting *Meyer v. Meyer* (*In re Meyer*), 244 F.3d 352, 353 (4th Cir. 2001)).  *See also Inspiration Coal, Inc. v. Mullins*, 690 F. Supp. 1502, 1505 (W.D. Va. 1988) (citing *Battle v. Rock*, 144 Va. 1, 10-11, 131 S.E. 344, 346 (1926)) ("To prove that this section applies, plaintiffs must show that they were existing creditors of [the debtor] when he granted the deeds in dispute and that the transfer was 'not upon consideration deemed valuable in law.'").  Section 55-81 of the Virginia Code provides that where a conveyance of property is not made in exchange for valuable consideration, that transfer is void as to creditors existing prior to the transfer.  *Id.*  The statute itself makes plain that in order to void a transaction pursuant to Virginia

Code § 55-81, there must be a showing of indebtedness existing at the time of the transaction.  *C.F.*

*Trust v. Peterson,* No. 1:97-CV-02003, 1999 WL 33456231, at *10 (E.D. Va. Jan. 8, 1999) ("[T]he

plaintiff must show that it had contracted debts at the time of the transaction at issue.") (citing Va.

Code Ann. § 55-81; *Barnes v. Vadico Terminals, Inc*., 408 F.2d 31, 34 (4th Cir. 1969) ("[I]n

Virginia a voluntary transfer is voidable only as to prior or existing creditors.")).

   While correctly observing that avoidance under Virginia Code § 55-81 requires no showing

of a fraudulent intent in making the transfer, the Trustee Memorandum offers no rebuttal on this

point.  The Porter Affidavit and the Tribble Affidavit speak identically on this factual issue:  the

Debtor had no existing creditors at the time of the consummation of the transaction between Porter

and the Debtor.[10]   The sole evidence offered in rebuttal by the Trustee is found in the Sheeran

Affidavit.  In paragraphs 1 and 2 of the Sheeran Affidavit, Ms. Daniels-Sheeran affirms:

   1.  That I was a member of Carr & Porter, LLC effective April 1, 2005.

   2.  That effective that date, Carr & Porter, LLC had a note payable to J. Ridgely
   Porter, III . . . for $1,000,000.00 and a line of credit for $150,000.00 with Suntrust
   Bank, as well as lease obligations, accrued tax obligations, and various small debts
   to vendors.

Sheeran Affidavit ¶¶ 1, 2.  While, at first blush, these assertions of fact in the Sheeran Affidavit

may seem to establish a factual issue on the existence of creditors or not at the time of the

transaction with Porter, a careful review of the undisputed facts here dispels such a notion.

   Porter addresses this alleged factual dispute in his Reply Memorandum in Support of

Motion for Summary Judgment (hereinafter "Reply Memorandum"):

---

[10] Paragraph 11 of the Tribble Affidavit states: "[a]t the time of the sale, the Debtor had
no debt."  Paragraph 5 of the Porter Affidavit states: " [a]s of the date of the sale, all of the
Debtor's outstanding indebtedness had been paid, and the Debtor had no debt of any kind due to
anyone."

31

> In the transaction documents, the parties signed an acknowledgement that there
> were no accounts payable of any kind (see Exhibit 1 attached). As the Trustee is
> well aware, the line of credit was negotiated after the sale. Attached as Exhibit 2
> is the "cancelled" line of credit on which Mr. Porter was obligated. Attached as
> Exhibit 3 are the SunTrust loan documents which were produced by the Trustee.
> Those documents were signed by the new owners and reflect there were "no
> disbursement at this time." Disbursements and Charges Summary. If the loan had
> occurred before the transaction, the new owners could have not signed.
> Furthermore, signing a commitment where no money has been expended does not
> create a debt.

Reply Memorandum at 5. A review of the Exhibits to the Reply Memorandum confirms these

representations and are uncontradicted by the Trustee. The February 14 Agreement confirms that

the closing date of the transaction of the Debtor with Porter was March 31, 2005. February 14

Agreement ¶ 1 ("Mr. Porter will withdraw from Carr & Porter as an equity partner as of the close

of business on March 31, 2005 (the 'Closing Date').").  The Sheeran Affidavit speaks to debt

existing as of April 1, 2005, which while proximate, obviously, nonetheless is after the closing and

consummation of the transaction of the Debtor with Porter. Accordingly, as the Trustee is unable

to prove there were existing creditors of the Debtor at the time of the transaction with Porter, the

Trustee cannot prevail on his claim against Porter under Count Two.

An alternative ground also prevents recovery by the Trustee against Porter under Count

Two. "Virginia Code § 55-81 simply requires that a transfer or conveyance be 'upon consideration

deemed valuable in law.'" *Shaia, Jr. v. Meyer* (*In re Meyer*), 244 F.3d 352, 355 (4th Cir. 2001)

(quoting Va. Code. Ann. § 55-81). This phrase refers to "*any* valuable consideration received by

the transferor." *Id.* (quoting *Moore v. Manson* (*In re Springfield Furniture, Inc.*), 145 B.R. 520,

533 (Bankr. E.D. Va. 1992)).

The requirement of any consideration deemed valuable at law differs substantially from the

more familiar standard of the Bankruptcy Code. Judge Huennekens has explained:

The United States Court of Appeals for the Fourth Circuit, in *C-T of Va. v. Euroshoe Assoc.*, 953 F.2d 637, 1992 WL 12307, at *2 (4th Cir. 1992), held that the "consideration deemed valuable in law" standard set forth in Virginia Code § 55-81 is different from the "reasonably equivalent value" standard employed in the Bankruptcy Code. That approach has been recently followed in this district:

> [I]t must be determined what the phrase "not upon consideration deemed valuable in law" means. This phrase has not been construed by the Virginia Supreme Court, but has been interpreted by the Fourth Circuit to mean that something of value must be gained. *C-T of Virginia v. Euroshoe Associates*, 762 F. Supp. 675 (W.D. Va. 1991), *aff'd*, 953 F.2d 637 (4th Cir. 1992) (table decision) [hereinafter *C-T 1*], That court explicitly found that the consideration does not have to be reasonably equivalent to what is being given up. *C-T of Virginia v. Euroshoe Associates*, No. 91-1578, 1992 WL 12307, at *1-3, *1-2, 1992 U.S. App. Lexis 1029, at *1-6, *4 (4th Cir. Jan. 29, 1992) (table decision reported at 953 F.2d 637) [hereinafter *C-T 2*]. Consideration that has been deemed valuable in the law has included the pre-payment of mortgage payments in exchange for the release of secured debt against property, *Shaia v. Meyer, In re Meyer*, 244 F.3d 352 (4th Cir. 2001), antecedent indebtedness in exchange for the conveyance of land, *Inspiration Coal, Inc. v. Mullins*, 690 F. Supp. 1502 (W.D.Va. 1988), and money in exchange for stock and control of a company, *C-T 1*, 762 F. Supp. 675. The district court in the *C-T 1* case found that as long as something is gained, "that is enough [compensation] to prevent avoidance of the transaction" under Va. Code § 55-81. *Id. at* 678.

*Schnelling v. Crawford* (*In re James River Coal Co.*), 360 B.R. 139, 167 (Bankr. E.D. Va. 2007)

(quoting *Wellington Apartment, LLC v. Clotworthy* (*In re Wellington Apartment, LLC*), 350 B.R.

213, 245 (Bankr. E.D. Va. 2006)). Porter asserts that the Debtor received substantial consideration

as a result of the transaction with Porter:

> The Trustee ignores numerous assets received by the Debtor as a result of the transaction. First, the Debtor continued in business when it could have been liquidated. Second, the Debtor retained and exercised the right to collect accounts receivable in the amount of $256,548.41. Third, the Debtor retained and exercised the right to bill and collect work in progress in the amount of $103,475.92. Fourth, the Debtor retained its existing legal staff. Fifth, the Debtor maintained its established client base with not a single client leaving as a result of the sale. Sixth,

the Debtor retained its clerical and administrative staff with years of experience. Seventh, the Debtor retained its established goodwill. Eighth, the Debtor entered into employment agreements with Mr. Porter and with the office administrator, whereby their services were secured for the future. Ninth, the Debtor obtained new management. Tenth, the Debtor retained physical assets allowing it to operate an established law firm, including furniture, fixtures, equipment and law books. Mr. Porter could have liquidated the firm and obtained more money than he obtained through this transaction, and the money that Mr. Porter could have withdrawn was paid to the Debtor.

Porter Memorandum at 6, 7. The Trustee attempts to answer this contention by the affirmation of

Ms. Daniels-Sheeran in her Affidavit: "[t]hat the firm Carr & Porter received nothing new from

Porter after the sale other than the note obligation to Porter." Sheeran Affidavit ¶ 10.

Porter disputes this assertion:

As the sole owner of the business, Mr. Porter had the right to transfer the business's accounts receivable to himself. He had the right to terminate the business and to transfer all the clients to another firm. When Mr. Porter allowed the business to continue in existence, the business received consideration. When the business was allowed to collect its accounts receivable and its work in progress and to keep those assets, it received consideration. When the business was allowed to retain its staff, both professional and support, it received consideration.

The business was not only allowed to continue, but it was provided with the accounts receivable and work in progress (virtually all of which was fully collected) that generated a substantial capital base upon which to build a successful future. To say this is not consideration is to ignore long-standing Virginia law which recognizes that forgoing rights can and is adequate consideration.

The Trustee ignores completely the employment agreements entered into whereby the business received not only new management, but the services of Mr. Porter and Ms. Tribble, both of which had been valuable employees. To say that obtaining valuable employees is not consideration to a business is to speak nonsense.

Reply Memorandum at 4-5.[11]

There is no factual dispute presented on this issue by the Trustee. Ms. Daniels-Sheeran

---

[11] It not being germane to the Court's decision, the Court expresses no opinion on whether Porter could "transfer all the clients to another firm."

assertion that the Debtor "received nothing new" under the February 14 Agreement is not factually on point on the issue of whether the Debtor received any consideration from the transaction. Porter is correct that the Debtor continued its existence with all of its substantial financial assets of cash, accounts, and work in progress, as well as its intangible—but nonetheless valuable—assets, such as its established client relationships and goodwill. Given the absence of the necessity of equivalency of consideration under Virginia Code § 55-81, the employment agreements of the Debtor with Tribble and Porter alone are sufficient to legally establish that the Debtor received "consideration deemed valuable at law" as a result of the transaction with Porter. *See Abrams Labs., Inc. v. Garrett* (*In re Adams Labs., Inc.*), 3 B.R. 495, 502-03 (Bankr. E.D. Va. 1980) ("In the instant matter, the Court finds that Garrett gave valuable consideration by promising not to compete against Adams as specified in the employment contract. The Court also finds that he gave consideration in his promise not to divulge 'any confidential information relative to the business, sales or financial condition of Adams to any individual,' firm or corporation without the consent of Adams."); Complaint, Exhibit F, Employment Agreement dated March 1, 2005, between Carr & Porter, LLC and J. Ridgely Porter, Jr. at § 1.1.

Accordingly, there being no material facts in dispute, and the Trustee being unable to prevail under Virginia Code § 55-81, Porter is entitled to the entry of summary judgment in his favor as to Count Two of the Complaint.

### SUMMARY

The Complaint of the Trustee as filed does not assert a claim against Porter pursuant to Bankruptcy Code § 548. The Motion to Amend of the Trustee is untimely and prejudicial to Porter and must be denied. There are no material facts in dispute, and Porter is entitled to the entry of

summary judgment in his favor as to Count One of the Complaint asserting a claim pursuant to 11 U.S.C. § 547(b) and as to Count Two of the Complaint asserting a claim pursuant to Virginia Code § 55-81.

Separate orders denying the Motion to Amend and awarding summary judgment to Porter and dismissing the Complaint of the Trustee will be entered by the Court.

The Clerk is directed to transmit a copy of this Memorandum Opinion to Robert V. Roussos, Esquire, counsel for the Trustee; to Conrad M. Shumadine, Esquire, counsel for Porter; and to Debera F. Conlon, Assistant United States Trustee.

Entered this _17th_ day of March, 2009 in Norfolk in the Eastern District of Virginia.

Stephen C. St. John
UNITED STATES BANKRUPTCY JUDGE